IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| ROBERT CHRISTOPHER YOUNG, JR., *et al.* | § § § § § § |
| *Plaintiffs*, | § § |
| v. | §  CIVIL ACTION NO. 2:23-CV-00102-JRG |
| HARRISON COUNTY, TEXAS, *et al.* | § § § |
| *Defendants*. | § |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Southern Health Partners, Inc.'s ("SHP") Motion to Dismiss Under 12(b)(6). (Dkt. No. 12.) In the Motion, SHP moves this Court to dismiss Robert Christopher Young, Jr., Lashun Fuqua, the Estate of Lonnetta Johnson, and Lonnetta Johnson's heir(s)'s (collectively, "Plaintiffs") causes of action against SHP. Having considered the Motion, the subsequent briefing, and for the reasons stated herein, the Court is of the opinion that the Motion should be **DENIED**.

**I.    BACKGROUND**

This case concerns the death of Lonetta Johnson. Per the Complaint, Ms. Johnson had been repeatedly incarcerated in the Harrison County jail ("County jail") in the years leading up to her death. (Dkt. No. 1 at ¶ 9.) Her documented medical conditions included asthma, heart trouble, hypertension, diabetes, epilepsy, drug addiction, alcoholism, and mental illness. (*Id.* at ¶ 11.) Her mental health issues included schizophrenia, depression, psychosis, schizoaffective disorder, PTSD, bipolar disorder, auditory hallucinations, and suicidality. (*Id.*) Ms. Johnson had on prior occasions exhibited psychotic actions while incarcerated in the County jail. (*Id.* at ¶¶ 13-23.)

On or about December 30, 2021, Ms. Johnson, while incarcerated in the County jail, was placed on suicide watch. (*Id.* at ¶¶ 30-36, 47, 63.) On January 2, 2022, a medical screening of Ms. Johnson resulted in her being diagnosed with psychosis, which was known to the County jail and its staff. (*Id.* at ¶¶ 47, 65.) Nothing in the record reflects that anyone sought medical treatment for Ms. Johnson while she was incarcerated between December 30, 2021 and January 13, 2022. While incarcerated, Ms. Johnson began to exhibit unusual symptoms, zoning out and generally being unable to stand up or support her weight. (*Id.* at ¶¶ 40-41.) On January 13, 2022, emergency medical services were called to the County jail, and Ms. Johnson was taken to the local hospital. (*Id.* at ¶¶ 65-68.) She was pronounced dead shortly after arriving there. (*Id.* at ¶ 69.)

SHP provides medical, basic dental, and basic mental health services to detainees of the County jail. (*Id.* at ¶ 85.) Under its contract, SHP was given authority to continue mental health treatment plans already in place or have on-site providers prescribe low-level mental health medication. (*Id.*) SHP staff were responsible for providing onsite emergency medical care to detainees and/or arrange for emergency ambulance transportation of detainees for offsite care. (*Id.* at ¶ 86.)

II.   **LEGAL STANDARD**

Under the Federal Rules of Civil Procedure, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Court can dismiss a complaint that fails to meet this standard. Fed. R. Civ. P. 12(b)(6). To survive dismissal at the pleading stage, a complaint must state enough facts such that the claim to relief is plausible on its face. *Thompson v. City of Waco*, 764 F.3d 500, 502 (5th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads enough facts to allow the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court

accepts well-pleaded facts as true, and views all facts in the light most favorable to the plaintiff, but is not required to accept the plaintiff's legal conclusions as true. *Id.*

In the Fifth Circuit, motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009); *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). "The court may consider 'the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.'" *Script Sec. Sols. L.L.C. v. Amazon.com, Inc.*, 170 F. Supp. 3d 928, 935 (E.D. Tex. 2016) (quoting *Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)).

"To state a claim under [S]ection 1983, a plaintiff must allege facts tending to show (1) that he has been 'deprived of a right secured by the Constitution and the laws of the United States,' and (2) that the deprivation was caused by a person or persons acting 'under color of' state law." *Bass v. Parkwood Hosp.*, 180 F.3d 234, 241 (5th Cir. 1999), citing *Flagg Bros. v. Brooks*, 436 U.S. 149 (1978). "The constitutional rights of a pretrial detainee . . . flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment." *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996) (*en banc*) (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)). These rights include the right to "basic human needs, including medical care and protection from harm." *Id.* at 650; *Sanchez v. Young Cnty.* (*Sanchez I*), 866 F.3d 274, 279 (5th Cir. 2017); *Converse v. City of Kemah*, 961 F.3d 771, 775 (5th Cir. 2020); *Arenas v. Calhoun*, 922 F.3d 616, 621 (5th Cir. 2019). "[A] medical professional treating a pretrial detainee on behalf of a governmental entity [is] acting under color of state law for purposes of § 1983." *Sanchez v. Oliver*, 995 F.3d 461, 466 (5th Cir. 2021) (citing *West v. Atkins*, 487 U.S. 42, 54 (1988)).

### III.    DISCUSSION

Plaintiffs' causes of action against SHP arise under 42 U.S.C. §1983. Specifically, Plaintiffs argue that Ms. Johnson's Constitutional rights were violated by the "conditions of her confinement." (Dkt. No. 1 at ¶ 7.) In the alternative, Plaintiffs assert causes of action under an "episodic acts and/or omissions" theory, which requires pleading deliberate indifference. (*Id.*)

Despite arguing in its Motion that these claims are improperly brought because SHP is a private actor, in its reply brief "SHP concedes that it can be subject to §1983 liability as a private actor." (*Compare* Dkt. No. 12 at 3 *with* Dkt. No. 23 at 4.) Nonetheless, SHP argues that the Court should dismiss Plaintiffs' causes of action because "Plaintiffs herein have failed to identify specific conduct on [SHP's] part which could subject it to such liability." (Dkt. No. 23 at 4-5.) SHP argues that it is merely responsible for medical services in the County jail and that the pled "conditions of confinement" were "outside the scope and control of SHP." (Dkt. No. 23 at 5-6.) SHP further argues that Plaintiffs have not identified any specific employee or agent of SHP but instead have consistently "clump[ed]" the County and SHP together, often referring in its Complaint to "county and/or SHP" without any facts specifically attributing actions to SHP.

Plaintiffs contend that "SHP, as Harrison County's contracted healthcare provider, chose not to transfer Lonnetta Johnson to an inpatient mental health facility when she arrived at the jail unclothed with no personal belongings while experiencing psychosis. SHP was required to medically clear Lonnetta for booking and commitment and did so despite her acute condition." (Dkt. No. 27 at 1.) Plaintiffs allege that SHP employees should have known that Ms. Johnson needed immediate medical attention due to her medical history. (*Id.*) Instead, based on the policies and practices of SHP and the County, SHP employees cleared Ms. Johnson for booking and commitment, knowing that she would be placed in a confined jail cell instead of an inpatient

4

facility where she could receive needed medical attention. (*Id.* at 5-6.) Thus, Plaintiffs contend that they have pled specific acts attributable to SHP sufficient to find liability.

The Court agrees with Plaintiffs. The Complaint includes sufficient facts to state a claim for SHP's liability under a "conditions of confinement" theory. Plaintiffs do not allege that SHP had direct control over the physical conditions of Ms. Johnson's cell. That is, the Plaintiffs' pleadings do not indicate that SHP was responsible for maintaining or monitoring the cell, and those pleadings do not indicate that SHP could control the "temperature of the cell, patient urinating on herself, etc." (*See* Dkt. No. 23 at 6.) However, the Complaint explicitly pleads that SHP had a choice to either (1) send Ms. Johnson to a hospital to receive medical attention or (2) clear Ms. Johnson for booking and commitment there by sending her into confinement. (Dkt. No. 1 at ¶¶ 27-28, 65, 87-91, 99.) Plaintiffs allege that SHP could have and should have sent Ms. Johnson to an inpatient mental facility but chose not to. (*Id.*) Therefore, according to the Complaint, SHP is responsible for the conditions of Ms. Johnson's confinement in that SHP's actions are directly responsible for Ms. Johnson being confined in a jail cell and not an inpatient mental facility.

The Court is persuaded that Plaintiffs plead sufficient facts to support this claim. In their Complaint, Plaintiffs specifically allege "SHP's responsibility for care of a detainee started no earlier than booking of the detainee into the jail, and physical placement of the detainee into the jail and notification to a member of SHP medical staff of same." (*Id.* at ¶ 87.) Plaintiffs also plead "SHP was financially incentivized, in order to continue its relationship with the County, to not have people such as [Ms. Johnson's] transported to a local hospital." (*Id.* at ¶ 89.) Further, SHP's contract with the County provided that "a detainee shall not be accepted into the jail by the County without first being 'medically cleared' for booking and commitment," but was silent as to mental

5

health issues, indicating a policy of neglecting to provide needed medical attention for mental health issues. (*Id.* at ¶ 91.)

SHP contends that it "does not and cannot control whether an inmate was detained or whether the inmate remains incarcerated or not." (Dkt. No. 23.) Yet, according to the Complaint, SHP does have some control over whether an inmate is detained. As explained above, Plaintiffs' Complaint specifically alleges that SHP has control over whether an inmate is sent to a hospital or is booked into the jail and thereby detained. The Complaint also alleges that SHP employees have a great amount of discretion over such matters. (Dkt. No. 1 at ¶ 97.) At the 12(b)(6) stage, the Court must accept the well-pleaded factual allegations of the non-moving party as true. *Thompson*, 764 F.3d at 502 (quoting *Iqbal*, 556 U.S. at 678). Accordingly, the Court finds that Plaintiffs have pled sufficient facts to state a claim for relief.

The fact that Plaintiffs did not name specific SHP employees in their Complaint is not fatal. Plaintiffs were required to state "simply, concisely, and directly events that, they alleged, entitled them to damages" against SHP: "they were required to do no more to stave off threshold dismissal for want of an adequate statement of their claim." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014). The Complaint alleges that upon information and belief that "SHP employees are overseen by SHP" and "SHP had staff on duty at the jail at which Lonnetta was incarcerated every day of her final incarceration in that jail." (Dkt. No. 1 at ¶¶ 86, 97.)

Additionally, there is a dispute as to whether Plaintiffs have stated a claim under an "episodic acts or omissions" theory, which requires showing deliberate indifference. Plaintiffs assert that this is "not an episodic acts or omissions case" and that "[t]his is a conditions of confinement case." (Dkt. No. 19 at 17.) Plaintiffs argue that they are not required to demonstrate deliberate indifference. (*Id.* at 2, 18.) The Court notes that Plaintiffs specifically assert in their

Complaint that "[i]n the alternative [to conditions of confinement theories], Plaintiffs plead episodic act and/or omission claims arising from policies, practices, and/or customs." (Dkt. No. 1 at ¶ 98.) As to whether Plaintiffs must specifically plead deliberate indifference to support an episodic act and/or omission claim, the Court finds that such is required. However, the Court also finds that Plaintiffs have done so.

Plaintiffs plead multiple times throughout their Complaint that the "[p]olicies, practices, and/or customs [of the County and SHP], as well as the failure to adopt appropriate policies, were moving forces behind and caused violation of the decedent's rights and showed deliberate indifference to the known or obvious consequences that constitutional violations would occur." (Dkt. No. 1 at ¶ 129.) Plaintiffs' Complaint also alleges that "SHP was financially incentivized, in order to continue its relationship with the County, to not have people such as Lonnetta transported to a local hospital," that "SHP, as opposed to County, upon information and belief, took the lead in developing relevant policy regarding healthcare and mental health care provision in the County jail," and that "SHP, while knowing that detainees needed immediate in-patient mental health care, would incarcerate such individuals in lieu of obtaining such needed care." (Dkt. No. 1 at ¶¶ 89, 97, 99.) Taking all the well-pleaded facts in the Complaint as true, the Court finds that Plaintiffs have pled sufficient facts for deliberate indifference at the 12(b)(6) stage, which is adequate to state a claim for relief on their episodic acts and omissions theories.

## IV.   CONCLUSION

For the reasons stated herein, the Court finds that SHP's Motion to Dismiss (Dkt. No. 12) is **DENIED**.

**So Ordered this**
**Aug 24, 2023**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE

7